UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| LOUISE RICKS | * | CIVIL ACTION NO.  12-2647 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice**.**

### Background & Procedural History

On July 27, 2006, Louise Ricks protectively filed applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments ("SSI").  (Tr. 29, 169-171, 191-193).[1]  She alleged disability as of December 31, 2005, because of mental disability, depression, nerves, and "hearing."  (Tr. 211, 236).  The state agency denied the claim(s) at the initial stage of the administrative process.  (Tr. 14-15, 52-55).  Thereafter, Ricks requested and received a February 20, 2008, hearing before an Administrative Law Judge ("ALJ").  (Tr. 429-445).  However, in an August 7, 2008, written decision, the ALJ determined that Ricks was not

---

[1]  Ricks filed a prior application that was denied on May 10, 2004, through the Appeals Council level.  (Tr.  212).  She did not further appeal the denial.

disabled under the Social Security Act, finding at step four of the sequential evaluation process that she was able to return to past relevant work as a cafeteria line server. (Tr. 16-26).[2] Ricks appealed the adverse decision to the Appeals Council. On February 12, 2010, the Appeals Council granted Ricks' request for review, vacated the ALJ's decision, and remanded the case for further proceedings. (Tr. 28-30).[3]

Upon remand, a new hearing was held on June 22, 2011, via video conference, before ALJ Gordan Momcilovic. (Tr. 396-428). However, in an August 3, 2011, written decision, the ALJ determined that Ricks was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 31-41).

Ricks again appealed the adverse decision to the Appeals Council. On August 8, 2012, the Appeals Council denied Ricks' request as to her claim for SSI; therefore, the ALJ's decision became the final decision of the Commissioner for purposes of Ricks' July 26, 2006, SSI application only. (Tr. 48-50).[4]

On October 5, 2012, Ricks filed the instant complaint for review before this court. She alleges the following errors,

    (1)    the ALJ's residual functional capacity is not supported by substantial evidence

---

[2] The ALJ also issued an alternative finding of "not disabled" at step five. *Id.*

[3] The Appeals Council granted review because the initial ALJ mistakenly determined that Ricks was insured for Disability Insurance Benefits only through December 31, 2005, rather than through December 31, 2007. (Tr. 29). In addition, the initial ALJ failed to address Plaintiff's claim for Supplemental Security Income payments. *Id.*

[4] The Appeals Council granted Ricks' request to review the disposition of her Title II claim because the ALJ failed to adjudicate that claim in his decision. (Tr. 46-47). The parties agree that the Title II claim is not now before the court. (Pl. Memo., pg. 2 n4; Gov.'t Memo., pg. 3 n2).

2

>   because he failed to incorporate all of the limitations recognized by Plaintiff's treating psychiatrist, or otherwise explain why he effectively rejected those limitations; and
>
> (2)   the Commissioner did not satisfy her burden at step five of the sequential evaluation process.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability

3

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

> (1)  An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.
>
> (2)  An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.
>
> (3)   An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4)  If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5)  If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis;

under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### The ALJ's Findings

I. <u>Steps One, Two, and Three</u>

The ALJ determined at step one of the sequential evaluation process that Ricks did not engage in substantial gainful activity during the relevant period. (Tr. 36). At step two, he found that she suffered from the severe impairment of major depressive disorder with psychotic features. *Id.*[5] He concluded, however, that these impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 36-37).

II. <u>Residual Functional Capacity</u>

The ALJ next determined that Ricks retained the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, but she can only understand, remember, and carry out simple job instructions and work-related tasks, and interact occasionally with coworkers, supervisors, and the general public. (Tr. 37).

III. <u>Steps Four and Five</u>

The ALJ concluded at step four of the sequential evaluation process that Ricks had no

---

[5] The ALJ determined that Plaintiff's medically determinable impairments of hypertension and obesity were non-severe. (Tr. 36).

5

past relevant work. (Tr. 40). Accordingly, he proceeded to step five. At this step, the ALJ determined that, as of the date that she applied for disability, Ricks was a younger individual, with a limited education and the ability to communicate in English. *Id*. Transferability of skills was not material. *Id*. He then observed that given Ricks' vocational factors, and if she had an RFC that did not include any non-exertional limitations, then the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 416.969; Rule 204.00. *Id*. However, because Ricks' RFC *did* include nonexertional limitations, the ALJ consulted a vocational expert ("VE") to determine whether, and to what extent her additional limitations eroded the occupational base for unskilled work at all exertional levels. (Tr. 40-41). In response, the VE identified the representative jobs of janitor-light, *Dictionary of Occupational Titles* ("DOT") Code # 323.687-014; janitor-medium, DOT Code # 381.687-018; and groundskeeper, DOT Code # 406.681-022 that were consistent with the ALJ's RFC and Ricks' vocational profile. *Id*.[6]

## Analysis

I.  Residual Functional Capacity

   a)  Excerpts of Medical Treatment Records

On December 14, 2004, Ricks was screened at Monroe Mental Health Center. (Tr. 284-285). She presented with a complaint of "nerves." *Id*. She described her symptoms as daily shaking and crying. *Id*. She also reported audio-visual hallucinations. *Id*. She reported that she was in good health, and did not take any medication. *Id*. She drank approximately six drinks per

---

[6] The VE testified that for the janitor-light job, there were 374,521 positions nationally and 6,484 jobs regionally. (Tr. 41, 423). For the janitor-medium job, there were 1,069,204 jobs nationally and 14,680 jobs regionally. *Id*. For the groundskeeper job, there were 114,036 such positions nationally, and 1,214 positions regionally. *Id*. This incidence of jobs constitutes a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

day. *Id*. The interviewer advised Ricks that her alcohol consumption appeared to be significant, and that it possibly contributed to her symptoms. *Id*. Monroe Mental Health diagnosed Ricks with alcohol abuse versus dependence, and referred her to Bastrop Addictive Disorders. *Id*.

On June 8, 2006, Ricks underwent a screening/intake at Louisiana Mental Health, Region VIII. (Tr. 286, 327). Her chief complaint was nerves and the inability to sleep. *Id*. She reported that she was stressed because she recently had been fired for smoking on the job. *Id*. She denied audio/visual hallucinations and any medical problems. *Id*. She was socially isolated, and did not want to be around other people. She did not acknowledge any suicide attempts, drugs, or alcohol. *Id*. She stated that she had completed 12th grade. *Id*. The clinician diagnosed Ricks with major depression-single episode, and assigned a Global Assessment of Functioning ("GAF") score of 60. *Id*.[7]

On August 8, 2006, Ricks underwent a psychiatric evaluation at Bastrop Mental Health Clinic. (Tr. 288-292). She stated that she was unable to function at her job. *Id*. She reported that she does some household chores, but not much. *Id*. She denied crying spells or suicidal ideation. *Id*. She also denied drug or alcohol use. *Id*. She was becoming angry at her job. *Id*. Her thought process was slow, and her concentration was low. *Id*. The physician diagnosed major depression-single episode; bipolar disorder depressed phase; and assigned a GAF of 60. *Id*.

---

[7] "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" *Boyd*, 239 F.3d at 701 n2 (citing AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV)).
A GAF of 51-60 is defined as "**[m]oderate symptoms** (e.g. flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, no friends, unable to keep a job). DSM-IV, pg. 32.

On August 16, 2006, Ricks wanted the doctor to write her a letter saying that her depression was caused by her job so she could give it to the judge. (Tr. 325). On September 16, 2006, Ricks was feeling a lot better. (Tr. 325). She dropped the lawsuit against her former employer because she realized that she had no case. *Id*.

On November 8, 2006, Ricks reported that she stayed around the house and watched television. (Tr. 295). She was encouraged to decrease her caffeine intake. *Id*. She appeared stable. *Id*.

On March 7, 2007, Ricks reported that she was staying at home, but mostly in bed. (Tr. 324). On March 23, 2007, she had a GAF of 62. (Tr. 323).[8]

On April 10, 2007, she appeared tense and sat on the edge of her chair. (Tr. 322).

On June 6, 2007, Ricks continued to experience symptoms of depression. (Tr. 321). She had a GAF of 64 on June 21, 2007. (Tr. 319).

On July 6, 2007, Ricks was neatly groomed and reported that she was "doing okay." (Tr. 321). She heard voices every now and then. *Id*.

On September 19, 2007, she had a bland affect. (Tr. 318). She denied problems with her medication. *Id*. She reported sometimes hearing voices, but could not make out what was said. *Id*. She spent most of her time at home. *Id*. She was able to get the housework done sometimes. *Id*.

On October 17, 2007, Ricks was sleeping well, with a good appetite. (Tr. 317). She did not express any concerns. *Id*.

---

[8] A GAF of 61-70 indicates "**[s]ome mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social occupational, or school functioning** (e.g., occasional truancy, or theft within the household), **but generally functioning pretty well, has some meaningful interpersonal relationships**." DSM-IV, pg. 32.

On November 13, 2007, Ricks was quiet and withdrawn, but denied any problems. (Tr. 317). On November 19, 2007, Ricks had a GAF of 66. (Tr. 316).

On December 12, 2007, she was sleeping and eating okay. (Tr. 317). She had a flat affect, but readily answered questions. *Id*. She voiced no concerns. *Id*.

On April 3, 2008, Ricks reported that she was sleeping okay, and that made her feel better. (Tr. 340). She felt that her medication was helping her depression. *Id*.

On May 5, 2008, Ricks expressed no problems with her medication. (Tr. 336).

On July 20, 2008, Ricks had no abnormal, involuntary movements. (Tr. 337).

On August 29, 2008, Ricks went to her appointment to have her disability papers filled out. (Tr. 336). She described her moods as up and down the past few months. *Id*.

On September 18, 2008, Ricks reported that she stays home all day. (Tr. 339). She complained of sleeping during the daytime and watching television. *Id*. She heard voices sometimes. *Id*.

On October 23, 2008, Ricks reported that she missed her appointment because her vehicle broke down. (Tr. 335).

On January 7, 2009, Ricks reported no problems with her medication. (Tr. 338).

On June 9, 2009, Ricks was quiet, with flat affect. (Tr. 334). She stated that she works full-time, daily, as a sitter. (Tr. 334).

On November 9, 2009, Ricks stated that she had hypertension, but was not on any medication. (Tr. 329). She denied any other medical problems. *Id*.

During a January 21, 2010, psychiatric update, Ricks was alert and oriented. (Tr. 328). Her behavior was appropriate. *Id*. Her insight, judgment, and impulse control all were adequate. *Id*. The physician diagnosed major depression with psychosis-single episode, and mood disorder

NOS. *Id*. She had a GAF of 60. *Id*. She also had no involuntary movements. (Tr. 333).

On July 26, 2010, Ricks underwent a mental status examination administered by consultative psychologist, E. H. Baker, Ph.D. (Tr. 361-362). During the interview, Ricks was appropriately dressed, with adequate hygiene. *Id.* She took a long time to answer questions. *Id.* She had an 11th grade education. *Id.* Her leisure activities included watching television. *Id.* She was unable to drive, and did not have a driver's license. *Id.* She reported that her sleep was stable since her medication had changed. *Id.* No symptoms of depression, mania, or anxiety were noted. *Id.* She reported auditory hallucinations, but could not explain what she heard. *Id.* She was oriented to person, place, time and situation. *Id.* Baker noted that her fund of general information was severely impaired, but her effort was sub-optimal. *Id.* Her word knowledge appeared severely impaired, but her level of effort suggested malingering. *Id.* She could not recite the letters of the alphabet. *Id.* Her conversational ability appeared poor. *Id.* She was able to follow 2-step instructions and understand simple questions, but her memory appeared impaired. *Id.* Overall sustained concentration appeared inadequate. *Id.* Her involvement in the mental status examination was minimal, with poor effort and persistence. *Id.* Baker suspected malingering. *Id.* Overall social interaction and adaptation were poor. *Id.* Baker diagnosed malingering (provisional) and mood disorder NOS (by history). *Id.*

Baker also completed a medical source statement of ability to do work-related activities (mental). (Tr. 364-366). He indicated that Ricks was *markedly* limited in her ability to: understand, remember, and carry out simple instruction; interact appropriately with the public, supervisors, and coworkers; and that she was *extremely* limited in her ability to: understand, remember and carry out complex instructions; make judgments on complex work-related decisions; and respond appropriately to usual work situations and to changes in a routine work

setting. *Id*.

On July 2, 2011, Ricks' treating psychiatrist, Rita Agarwal, M.D., completed a medical statement concerning bipolar disorder and related conditions for Social Security disability claim. (Tr. 369-371). She assigned a GAF of 60. *Id*. She indicated that Ricks suffers from sleep disturbance, decreased energy, difficulty concentrating or thinking, and hallucinations. *Id*. She further indicated that Ricks has no restrictions of activities of daily living, and but moderate difficulty in maintaining social functioning. *Id*. Also present were deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner. *Id*.

Agarwal also completed a form indicating that Ricks was

*Moderately impaired in ability to*: remember locations and work-like procedures; understand and remember short and simple instructions; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; travel in unfamiliar places or use public transportation;

*Markedly impaired in ability to*: interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; set realistic goals or make plans independently of others.

*Not significantly impaired in ability to*: carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and punctuality within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with and proximity with others without being distracted by them; make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; ability to respond appropriately to changes in the work setting; ability to be aware of normal hazards and take appropriate precautions.

(Tr. 370-371).

      b)    <u>Discussion</u>

In deriving Plaintiff's RFC, the ALJ stated that he assigned "little weight" to Dr. Baker's opinion, because, in effect, Baker suspected that she was malingering during the evaluation process. (Tr. 39-40).[9] Instead, the ALJ assigned "significant weight" to Dr. Agarwal's opinion because he deemed it consistent with the evidence of record. *Id*. The ALJ further stated that Ricks' RFC was supported by her own

> testimony in light of her medical treatment history; mental status examination notes from the Bastrop Behavioral Health Clinic indicating that her behavior was appropriate, her thought was goal oriented and that her judgment and insight were adequate; malingering observed by Dr. Baker; conflicting statements regarding her education level and the opinion of Dr. Agarwal.

(Tr. 40).

Plaintiff contends that the ALJ erred by purporting to assign "significant weight" to Dr. Agarwal's opinion, but then omitted or otherwise failed to address the marked limitations of functioning endorsed by Dr. Agarwal, i.e., the marked impairment in the ability to interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to set realistic goals or make plans independently of others.[9]

The court observes, however, that Dr. Agarwal also indicated on another portion of the

---

[9] In other words, Baker assessed Ricks' work capacity based on her malingered presentation.

[9] Ordinarily, a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." 20 C.F.R. § 404.1527(d)(2). "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir.1995) (citation omitted). However, an ALJ cannot reject a medical opinion without an explanation supported by good cause. *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted).

same form that Ricks experienced but moderate difficulty in her ability to maintain social functioning. (Tr. 370). Moreover, the moderate impairment initially credited by Dr. Agarwal is consistent with the GAF scores from Ricks' treatment notes which ranged from moderate to mild in severity.

Stated differently, rather than crediting Dr. Agarwal's marked limitations of social functioning, the ALJ implicitly credited Dr. Agarwal's initial impression that Ricks was no more than moderately limited in her ability to interact with others. Importantly, the ALJ's resolution of this conflict is supported by Ricks' own testimony. At the most recent hearing, Ricks admitted that she had no problem with people, and that she even likes people. (Tr. 412). She acknowledged that she gets along with family members, friends, and neighbors. *Id*. Ricks has been consistent in this regard. At the time she applied for disability, she stated that she got along "okay" with authority figures, and had not been fired because of the inability to get along with others. (Tr. 256). In addition, she had no problems getting along with family, friends, neighbors, or others. (Tr. 255).[10]

In short, there is substantial record evidence to support the ALJ's decision to limit Ricks' ability to interact with others to an *occasional* frequency, i.e., up to two hours in an eight hour workday.[11] In fact, at the latest hearing, the vocational expert ("VE") opined that there were jobs

---

[10] Also, at least at one point in 2009, Ricks apparently was able to work as a sitter, which would seem to entail rather frequent contact with the person being watched. While there is no evidence that Ricks maintained this sitter job for any extended period, the fact that she even attempted the job belies the notion that she was unable to interact closely with others.

[11] *See* TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK--THE MEDICAL-VOCATIONAL RULES OF APPENDIX 2, SSR 83-10 (defining "occasional").
   Plaintiff argues that an "individual whose mental illness is causing marked limitations in her ability to interact obviously cannot be assumed able to schedule her symptoms to coincide with the demands of sustained work." (Reply Memo., pg. 2). Plaintiff further argues that the Commissioner has not shown how a limitation to occasional interaction with others would

where the worker would not need to interact with the public at all, have very little contact with coworkers, and infrequent contact with the supervisor. *See* Tr. 423.[12] The VE further testified that additional limitations such as the inability to make decisions, tolerate changes in the work setting, or to exercise judgment would not impact the jobs previously identified by the VE in response to the ALJ's hypothetical(s). (Tr. 423-424).

In sum, the court finds that the ALJ's RFC determination is supported by substantial evidence, and/or that any error was harmless.[13]

II.     Step Five Determination

Plaintiff challenges the ALJ's step five determination on the basis that his hypothetical(s) to the VE failed to include additional limitations that she contends were warranted by the record. However, a hypothetical need only reasonably incorporate the disabilities and limitations

---

address a marked limitation that included unpredictable depressive/psychotic outbreaks. *Id*. As discussed above, however, the ALJ did not endorse a marked limitation in Ricks' ability to interact with others, and that determination is supported by Plaintiff's own testimony. Moreover, Dr. Agarwal noted that Ricks had not experienced "[r]epeated [e]pisodes of deterioration or decompensation in work or work-like settings which cause the patient to withdraw from the situation or experience exacerbation of signs and symptoms . . ." (Tr. 370).

[12] Plaintiff emphasizes that according to the VE, if an individual had a marked limitation in her ability to interact appropriately with supervisors and coworkers, where "marked" is defined as a serious limitation with a substantial loss in the ability to effectively function, then there would be no jobs available for that hypothetical worker. (Tr. 425-426). However, there is no indication that Dr. Agarwal shared that same definition for "marked." Indeed, she expressly opined that Ricks was not significantly impaired in her ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 371).

[13] "Procedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988); *see also Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights). Any error here does not rise to the foregoing level.

recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). Here, the ALJ's hypothetical(s) to the VE substantially incorporated the limitations that the ALJ credited in his RFC, and that assessment is supported by substantial evidence. *See* discussion, *supra*.

Relatedly, Plaintiff contends that the ALJ's hypothetical to the VE failed to include moderate limitations in concentration, persistence, and pace that the ALJ adopted during his application of the psychiatric review technique at steps two and three of the sequential evaluation process. (Tr. 36-37). Citing several decisions from other circuits, Plaintiff argues that this error compels remand. *See e.g.*, Pl. Brief, pg. 10. However, the Fifth Circuit has held that a hypothetical that includes "restrictions to rare public interaction, low stress, and simple, one- to two-step instructions reflect that the ALJ reasonably incorporated [the claimant]'s moderate concentration, persistence, and pace limitations such that the hypothetical question was proper." *Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008) (unpubl.) (citation omitted).[14] Citing *Bordelon*, other courts in this circuit have held that an RFC limited to simple work reasonably incorporates a moderate or even *marked* limitation in concentration, persistence, or pace. *Reid v. Astrue*, Civil Action No. 10-0237, 2011 WL 4101302 (S.D. Miss. Aug. 15, 2011) *report and recommendation adopted,* 2011 WL 4101277 (S.D. Miss. Sept. 8, 2011); *Madrid v. Colvin*, Civil Action No. 12-800, 2013 WL 6641305 (N.D. Tex. Dec. 17, 2013); *Cornejo v. Colvin*, Civil Action No. 11-470, 2013 WL 2539710 (W.D. Tex. June 7, 2013).

Also, at the earlier hearing held in this matter, the ALJ posed a hypothetical to the VE that included moderate limitations in the ability to maintain attention and concentration for extended periods and to set goals independently of others, yet the VE opined that these

---

[14] Although an unpublished Fifth Circuit decision does not constitute precedent, the fact that it is unpublished reflects the panel's opinion that the case addresses well-settled principles of law. *See* 5th Cir. Rule 47.5.1-5.

limitations would not preclude Ricks from performing her past relevant work or from making an adjustment to work that exists in substantial numbers in the national economy – albeit, the VE from the initial hearing identified different representative jobs than the second VE. (Tr. 441-443).[13] Accordingly, Plaintiff's argument lacks merit.

## Conclusion

The ALJ in this case was tasked with determining whether Ricks was disabled during the relevant period. In so doing, he considered the lay testimony, the medical record, and expert opinion evidence. The evidence was not uniform and could have supported a different outcome. However, conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).[14] That is not

---

[13] The court notes that at the second hearing the VE opined that there would be no jobs available if the hypothetical worker were off-task for at least ten percent of the workday. (Tr. 424). However, this hypothetical exceeds in severity the definition of "moderate limitation" ordinarily employed by ALJs, that the Fifth Circuit has declined to disturb. *See* Tr. 442; *Giles v. Astrue*, 433 Fed. Appx. 241 (5th Cir. July 18, 2011) (unpubl.); *Cantrell v. McMahon*, 227 Fed. Appx. 321, 2007 WL 557567 (5th Cir. 2007) (unpubl.); *Beene v. McMahon*, 226 Fed. Appx. 348, 2007 WL 836926 (5th Cir. 2007) (unpubl.); and *Zills v. Barnhart*, 220 Fed. Appx. 289, 2007 WL 627605 (5th Cir. Feb. 27, 2007).

[14] Admittedly, this court has expanded upon some of the reasoning given by the Commissioner for his decision. Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*. This exception is applicable here. Further, the Fifth Circuit implicitly has sanctioned the federal courts' practice of assigning independent reasons for discounting newly adduced evidence. *See e.g., Foster v. Astrue*, 2011 WL 480036 (5th Cir. Feb. 10, 2011) (unpubl.); *Garth v. Astrue*, 393 Fed. Appx. 196 (5th Cir. Aug. 26, 2010) (unpubl.).

to say that the ALJ's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Ricks was not disabled under the Social Security Act is supported by substantial evidence and remains free of legal error. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 27th day of December 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE